TAPPAN STEVENS *v.* ARAD S. KENT.

*School Districts. Officers. Taxes.*

It is not necessary that the moderator chosen at the annual school district meeting should preside at all subsequent meetings of the district during the year; the proceedings will be valid if the district should at a subsequent meeting elect a moderator to preside over that meeting.

The prudential committee of a school district refusing to do a particular act, in

his official duty, in good faith, not believing it to be a duty, will not create a vacancy in the office; but if a new district should be erected, and the prudential committee of the old district is included within the limits of such new district, it will create a vacancy in the office.

The fact that a school district mistook their rights, and the location of their school house proved to be illegal, and upon indictment was adjudged a nuisance, will not effect the validity of the tax raised to build the school house.

A public officer is entitled to reasonable intendments in his favor, the same as are applied to the proceedings of courts.

REPLEVIN for a wagon. Plea, the general issue, and trial by the court.

On the trial, the taking of the wagon by the defendant was conceded. It was also proved, that there had been a school district, in Newbury, supporting schools, holding school meetings regularly and doing business generally done by school districts, for the last forty years, called district No. 3.

It further appeared, that at a regular meeting of said district, duly warned, and held on the 30th day of September, A. D. 1850, (being the annual meeting,) the warning of which contained among other articles the following : " 1st. To choose a moderator. 2. To choose a Clerk, Prudential Committee, and Collector for the year ensuing. And 5. To see if the district will agree to build a new school house."

It appeared, that Charles Story was chosen moderator; Tappan Stevens, (the plaintiff,) Prudential Committee; Arad S. Kent, (the defendant,) Collector. And the following votes were passed, which appeared from the record, to wit; "On motion of J. Atkinson, voted to build a new school house in said district." "Voted, to choose a committee of three persons, to be denominated the building committee." And three were appointed. "Voted, that said committee may agree upon a location, and plan, and the probable expense of said school house ; or the expense of repairing the old one, and report at the next regular meeting.

It further appeared, that at a regular meeting of said district, (duly warned,) held on the third day of February 1851, and in the warning of which were among other articles the following ; " 1. To choose a moderator to govern said meeting. 2. To hear the report of the committee raised at a former meeting. 3. To see if the district will raise money to build the said house. 4. To

see if they will raise money to repair the old house. 6. To see if the district will direct the location of their school house. And 7. To raise a new committee, or instruct committee in any matters pertaining to the affairs of the said district."

Tappan Stevens was chosen moderator and among other matters, the following are recorded. " Voted, and accepted a verbal report from Simeon Stevens, Jr., one of the committee. Voted, to pass over the 3, 4, 5 and 6, articles for the present ; and act on the 7. Voted, to elect an addition of two to the building committee, who were elected at a former meeting ; voted, to choose Joseph Atkinson and Austin A. Avery, as the addition to said committee. Voted, to instruct said committee, to prepare a plan of said school house, and report at the adjourned meeting, together with the probable expense of building the same and its location." That this meeting was duly adjourned to the 7th day of February, 1851, 6 o'clock P. M., at which time the district met, and said committee made a report in writing; the said report was accepted, and the 3d article taken up. " Voted, to raise the sum of $500, on the poll and ratable estate of the inhabitants of said district No. 3, for the purpose of building a new school house in said district." On motion, " voted, to restrict the committee in the sum of $600, for the finishing of said house ; voted, to adopt the report, and that the committee carry out their plan in the building of said house, and that half the sum raised be paid over by the first day of June next, and the other half by the first day of October next." And the meeting adjourned without day.

It further appeared, that immediately after said meeting the building committee proceeded to make contracts for building said house, and at the time of holding what was called the rescinding meeting herein after mentioned, the committee had made contracts and bought lumber for the house, and drawn it to the ground where the house was to be placed.

It also appeared, that the plaintiff all along opposed the building of a new house, and raising money for that purpose ; assigning as a reason, that it would cost too much, and at a rescinding meeting, so called, of the district, held on the first day of March, 1851, the plaintiff told the district, that he would never make up said tax, as prudential committee, and never would pay his tax. That the plaintiff further told them, that they had no right to place the

XXVI        33

house on the site where the state house stood, that being the place selected by said committee.

It appeared, that plaintiff did refuse to assess the tax raised, for building said house. That the district were never told till said rescinding meeting, that they had no right to build there; but, supposing they had the right to do so, they went on by their said committee, in good faith, and erected the house. That they had kept their school in a house on the common for the last fifty years, and in the house previous to this new one twenty-two years, but on a different part of the common.

It appeared, that the town of Newbury, at their annual March meeting, held on the 4th day of March, 1851, voted a new school district, called district No. 22, composed in part of the territory of district No. 3 ; and the plaintiff and his land came in the limits of No. 22. That said district was organized, but at the next annual March meeting, of said town in 1852, was set back to district No. 3, and re-annexed to it.

That the selectmen of said Newbury, on the 10th day of March, 1851, on application of said district No. 3, regarding the office of prudential committee vacant, as well by plaintiff's declining and refusing to assess the tax aforesaid, as by his being included in and being a member of district No. 22, appointed Simeon Stevens, Jr., prudential committee of district No. 3, which appointment was in writing. That said written appointment was immediately put into the hands of the said Simeon Stevens, Jr., and by him handed to the clerk of district No. 3, which has by said clerk been kept on file ever since, but not recorded.

That said Simeon Stevens, Jr. took upon him the duties of prudential committee, and assessed and apportioned said $500, so raised, among the tax payers of said district No. 3, and made out and signed a rate bill of the same in due form, and procured a warrant to be annexed, and put the same into the hands of the defendant, as collector, on the 30th day of May, 1851, for collection, in which tax bill the plaintiff was rated, and his tax was $21,86.

It appeared, that the defendant called on the plaintiff several times and demanded his said tax, but the plaintiff uniformly declined, saying he would never pay the tax, and that it was illegal.

That defendant thereupon levied the said rate bill and warrant

Stevens *v.* Kent.

on the wagon in question; but plaintiff immediately replevied the same.

It also appeared, that after said house was completed, the building committee were indicted, for erecting said house as a nuisance, and were convicted. That said district whenever they called meetings of the same, inserted an article in the warrant to choose a moderator, and elected one without any reference to the moderator elected at the annual meeting; that this was their uniform practice, but it did not appear that the moderator elected at the annual meeting was present at any meeting, except that at which he was elected moderator, on the 30th day of September, 1850.

It also appeared, that the plaintiff sent the said building committee a written communication signed by him, as town agent, to the purport, " that if they built the school house on the spot where the old state house stood, they must suffer the consequences," which the committee deemed a threat; but this was after the foundation of the house was laid, and the sills leveled, and the timber got on to the ground.

The County Court, June Term, 1843,—COLLAMER, J., presiding,—upon the foregoing facts, rendered judgment for the plaintiff for one cent damage and his costs.

Exceptions by defendant.

*A. Underwood* for defendant.

I. School district No. 3, from the length of time it has been recognized as such, and transacting business as a district will be presumed to have been properly organized. *Barnes* v. *Barnes,* 6 Vt. 393. *Thomas* v. *Gibson,* 11 Vt. 607. *Sherman* v. *Bugbee,* 16 Vt. 493.

II. The exceptions show a legal meeting, and proper vote for building a school house, as also for raising $500, for the purpose of building the same.

III. The *location* of the house, was in *good faith.* The fact, that plaintiff informed the district, they had no right to locate it there, was mere matter of opinion, and an after thought. To hold that any member of the district may repudiate his tax, because the district happened to be mistaken in their right, would be indeed a hardship, as much so as if they had purchased land for the house, and the title chanced to fail.

The house itself is not lost to the district, but may be used in another location, and it is not for the plaintiff who has the beneficial use of the house, in common with the rest of the district, to say he will not contribute to the expense, because the district chanced, under a mistake of their rights, to erect the house in what turned out to be the highway.

IV. The fact, that the moderator chosen at the annual meeting, did not preside as moderator at the meeting voting the tax, does not invalidate the tax, and render its collection illegal. It does not appear that the moderator chosen at the annual meeting was present, and if he is to be regarded as the proper officer to preside when present, his absence is to be presumed, if another chosen for the purpose did preside. It was customary with this district, (as it is believed to be with most or all other districts in the state,) to choose a moderator for each meeting, and the recent statute, giving districts power to elect a moderator, it is believed is merely in affirmance of the law, as it was before. _See_ Act of 1852 p. 39. _Tucker_ v. _Aikin,_ 7 N. H. 114.

V. It will be claimed by the plaintiff, that there was no vacancy in the office of prudential committee, authorizing a new one to be appointed to assess the tax and discharge the other duties of committee.

The defendant insists, that there was a vacancy. 1. From plaintiff's refusal to act. 2. From the fact of his being set off to district No. 22. By the Comp. Stat. 146 § 20, the selectmen may fill a vacancy, which has occurred from any cause. It is difficult, (in a common sense view of the subject,) to see why a _flat refusal to do the duties of an office,_ does not make a _vacancy_ of it, as much as _removal, sickness,_ or _insanity._ Again, the refusal of the plaintiff to act as committee, may be regarded as a _resignation_ of the office, and the district procuring _another appointment,_ as an acceptance of it. This may be done _expressly_ or by implication. Angel & Ames on Corporations 424–5–6. _Cloutman_ v. _Pike,_ 7 N. H. 210. A neglect to do the duties of an office is sufficient cause of _amotion._ Angel & Ames on Corp. 418.

But the defendant insists, that the plaintiff was legally set off to district No. 22, thereby leaving the office of committee in No. 3, vacant. It is admitted that districts are to be composed of territory, not persons ; and it is submitted that the petition in this case,

(adopted by the town,) taken together indicates and marks *territory*, and is sufficiently certain to be established by the court. The court will make every reasonable intendment in favor of the description. In *Cutting* v. *Stone*, 7 Vt. 471, *territory* was not alluded to, nor any territorial bounds given, in making limits for a village; but in *Williams* v. *Willard*, 23 Vt. 369, territorial bounds, (though not more definite than in the present case,) were made and the village established. No one can doubt the meaning of the petition, nor would any surveyor be at a loss, from the petition, to trace out the bounds of district No. 22, as there described .

The case shows the appointment of Stevens, sufficiently recorded by the district clerk, if indeed such record be necessary.

The plaintiff's absolute refusal to pay the tax rendered it unnecessary for the collector to give time, and appoint a place to receive it. *Downer* v. *Woodbury*, 19 Vt. 329.

*Leslie & Dickey* for plaintiff.

I. We insist, that the vote raising the money and upon which the tax was assessed was void. *First.* Because the meeting at which the vote was taken raising the money, was not *moderated* by Charles Story, the legal moderator, no vacancy having occurred in the said office.

The mere absence of the moderator from the meeting at the time the vote was taken, did not create a vacancy in the office of moderator. The said Story was chosen for one year and until another was chosen, and he had the right to moderate *all* meetings within that period. Comp. Stat. Chap. 20 § 25.

A moderator *pro tem*, was not known to the law prior to the passage of the Act of 1851. Nor could a school district *prior* to the passage of that act, fill a vacancy in the office of moderator. 11 Vt. 618.

*Second.* The case finds, that at the same meeting at which the tax was voted, (Feb. 7, 1851,) and before the tax was voted, the district voted, to accept the report of its building committee, locating the school house on the public common, and did in pursuance thereof locate and build said house on said public common, and by reason of which location, it became and was a public nuisance, for which the building committee were indicted. Therefore, we insist, that

the vote raising said tax, was for this reason *void*.   It was in *fact* and *effect* raising money by tax, to create and erect a nuisance.

No person's property can  be taken, nor can he be  compelled against his will to  contribute and pay  money, and  much less pay a tax voted and assessed for an illegal object and purpose.

And it is no answer to this  proposition, to  say that the district supposed, that they had a right so to locate the house, and acted in good faith.

II. We insist, that the assessment of the tax was void.   1. Because the office of  prudential committee, did not become vacant by reason of the  attempted  erection of school district No. 22, into which Tappan Stevens the legal prudential committee was attempted to be set.    District No. 22, was composed of persons, not territory, therefore, the proceedings erecting the district were void.    8 Vt. 402.    10 Vt. 480.

2. Nor did  the  office of prudential  committee become vacant, because he neglected or refused to assess the tax.    If he neglected or refused to perform a known duty, incumbent  upon him to perform, he might be liable to a prosecution, perhaps, but it would not create a vacancy in his said office.

But he was guilty of no dereliction of duty.   He was in no wise bound to assess a tax  voted for an illegal purpose and object. Therefore, Simeon Stevens, Jr. had no power  to assess said tax, and his  appointment and acts, as  prudential committee were not binding.   The power of taxation is derived exclusively from statutory provisions, therefore, the requirements  of the  law must be strictly complied with.    2 Day's (Conn.) 550.

The object and purpose  of taxation  must be legal, and  within the corporate powers of the corporation imposing the tax.    *Drew* v. *Davis et al.*, 10 Vt. 506.

The opinion of the court was delivered by

REDFIELD, Ch. J.    I. In regard to the necessity of having the moderator of a school district meeting who was appointed  at the annual meeting the same  during the whole  year ;  it seems to us of no importance.    If it was really the  object of the  statute  to have the moderator of such meetings hold  office during the year, which seems  to be  the  import of  the  ch. 20, § 25 of the Compiled Statutes, it never could have been expected, that if it became

desirable to hold other meetings, than the annual meeting, and the moderator was not present, that his place could not be supplied, and the meeting must fail for this cause, and if the meeting proceeded, under the moderation of another, that the proceedings were not valid. The consideration, that provision is made for supplying vacancies in other district offices, and not in this, shows, that the legislature did not attach any such vital importance, to the presence of the annual moderator at all meetings, else·they must have felt the essential importance, of supplying any vacancy, which might occur in that office, as well as others. ·

II. In regard to the vacancy in the office of prudential committee of this district, something perhaps depends upon the view we take of the legality of the tax. For if the tax was, what it is denominated by plaintiff's counsel, and what the plaintiff himself seems to have believed it to be, a tax to raise money, for the purpose of enabling the district to commit a crime, his refusal to assess the tax was no dereliction of duty.- And a refusal to do a particular act, in one's official duty, in good faith, not believing it to be a duty, should scarcely be regarded, perhaps ever, as creating a vacancy in the office. If there was a power of amotion from office, which exists in regard to certain corporate officers, in England, the case might be different. One having that power might, under circumstances, feel justified in removing an officer, rather than have those interested, compelled to resort to a writ of mandamus. But where no such power of amotion exists, and the officer simply refuses to do a particular act, even one required by his duty, it has been held, in this state, not to create a vacancy in the office. *Cummings* v. *Clark*, 15 Vt. 657.

But we think, it must be regarded, as sufficient to vacate the office, that a new district was erected, and the prudential committee of this district included within its limits. The objection, that the new district is not defined, by intelligible geographical limits is certainly not shown in the present case, unless we are to allow intendments, and presumptions, for the purpose of creating doubts, whereas the legal presumption is in favor of the proceeding, and of all proceedings, until the contrary be shown. There can be no doubt there was an attempt to define the new district, by strict geographical limits. Most of the monuments are so specific, that there is no ground of doubt, in regard to them, and we presume

the others will be readily ascertained, upon the ground, by following, from one given point to another, so as to include such lands, as are named. The fact, that certain persons are named, tends to create no necessary uncertainty. We think therefore, that the new appointment must be regarded as valid.

III. The only remaining question made, is in regard to the validity of the tax raised to build a school house, upon the site of the old state house. If this were a tax for the avowed purpose of erecting a nuisance, there could of course, be no question. But will the fact, that the location proved to be illegal, and that it was, upon indictment, adjudged a nuisance, render the tax illegal? The proceeding was in form an indictment, and for a technical offence against the criminal laws of the land. · But in fact, it was a proceeding merely, to test the right of the district to maintain their school house in that particular spot. Although the judgment, in legal terms, was *prosternere nocumentum* practically, it only required the removal of the school house, a short distance, which no doubt could be effected, without detriment to the house, and at no great expense. The effect is certainly not very different, so far as the district is concerned, from what it would have been, if the title to the land had been decided, against them, upon a writ of ejectment, probably not as unfavorable, in the matter of removing the house, since in the present case there can be no question, in regard to that. Such a disaster is liable, at any time, to overtake any school district, in regard to the title to the land, upon which they may have recently erected their school house, or in regard to a town, in building a town house. And we do not think it should have the effect, to avoid the tax, assessed for the purpose of building a house, under such circumstances, that the title of the site is found not to be in the district. It is true, no doubt, that if we were seeking occasion to involve a public officer, in *loss, or ruin,* or to embarrass the operations of a municipal corporation, by urging a degree of strictness, in the pursuit of their legal rights, which no man could accomplish, short of the power of prophecy, we might very readily adopt a course of construction, and argument, which would render this tax void. I have no doubt some such decisions may be found. But upon what rule of reciprocity, or courtesy, or justice, it was ever considered, that the judgment of courts of record, were to be held exempt from all presumptions of error,

and that subordinate officers should be straightened up, to a discipline, before which no human sagacity is adequate to stand, I could never comprehend, unless it were to make amends for our own impunity, by the severity of our judgments, in regard to the conduct of other public officers.   By this it is not meant, that any public officer is entitled to any thing more than reasonable intendments in his favor, the same that we apply to the proceedings of courts. This is the rule now, in all courts, not only in regard to matters of record, but as to the proceedings of all public officers, and it is one which is fairly entitled to be carried out.   And upon this basis we think, so far as appears, in the present case, the tax must be regarded as legal.

Judgment reversed, and case remanded.